IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SHAVONNE WARREN,            )
                            )
    Plaintiff,              )
                            )
vs.                         )
                            )
ALLIANCE PANCAKE PARTNERS, LLC d/b/a )
INTERNATIONAL HOUSE OF PANCAKES,     )
                            )
    Defendant.

# COMPLAINT

## I. JURISDICTION

1. This is a suit for relief from sexual harassment and disability-based discrimination and retaliation in employment instituted pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §2000e *et seq.*, and the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §12101 *et seq.* Jurisdiction of this Court exists pursuant to 28 U.S.C. §§1331 and 1343(4).

2. Plaintiff Shavonne Warren ("Plaintiff") timely filed a charge of discrimination against defendant Alliance Pancake Partners, LLC ("Defendant") with the Equal Opportunity Commission within 180 days after the last act of discriminatory treatment. Plaintiff has further filed this suit within 90 days after receipt of her right-to-sue letter issued from the EEOC.

## II.  PARTIES

3.  Plaintiff is a female citizen of the United States over the age of nineteen and a resident of Jefferson County, Alabama.

4.  Defendant is a corporation headquartered in Florida.  It is and was at all times relevant to this complaint an employer as contemplated under Title VII and the ADA.

## III.  STATEMENT OF FACTS

5. Defendant owns and operates an International House of Pancakes ("IHOP") restaurant on Crestwood Boulevard in Birmingham, Alabama and did so during the relevant events of this case.

6.  In or about February of 2015, Plaintiff became employed by Defendant at the Crestwood IHOP as a server.

7.  During the events forming the basis of this case, Jaron Stewart was Store Manager over the Crestwood IHOP.

**Sexual Harassment**

8.  Steven Springer is male and became employed by Defendant as a dishwasher at the Crestwood IHOP in the fall of 2015.

9.  After he was hired, Springer immediately began subjecting Plaintiff to sexual harassment, including:

2

(a) On his second day of work, Springer came into the ladies' room when Plaintiff was using the bathroom and tried to open her stall;

(b) He would grab Plaintiff's buttocks;

(c) He would grab his crotch and stare at Plaintiff;

(d) He would make comments to Plaintiff about her buttocks and body;

(e) He would tell Plaintiff "You know you want me to hit that" and look at her crotch or point at it;

(f) He would ask Plaintiff to let him come over to her house; and

(g) He would take money out of his pocket and ask Plaintiff what she would do to get the money.

10. Plaintiff and Springer worked together about five days a week and he said or did something sexual to Plaintiff every time they did.

11. Plaintiff told Springer to leave her alone many times.

12. However, he would not stop.

13. Springer's harassment of Plaintiff was unwelcome and distressing.

14. Plaintiff complained to Stewart about Springer's sexual harassment many times, beginning when Springer had tried to open her bathroom stall.

15. Stewart said he would stop it, but he never did anything.

16. Once when Plaintiff complained to Stewart, he said "How do I know you're not having sex with him?"

17. Plaintiff also complained about Springer's harassment to the night shift managers at the Crestwood IHOP.

18. Nothing was ever done to stop it.

19. In or about February of 2016, Springer pulled his pants down in front of Plaintiff and exposed his genitals to her.

20. Plaintiff reported it to Stewart.

21. On or about that same day, Springer put his hands on another female employee.

22. That employee complained to Stewart about it, and he finally terminated Springer.

**Plaintiff's Termination**

23. In 2012, Plaintiff was diagnosed with Lymphoma.

24. By 2015, Plaintiff's cancer was in remission, but she had periodic checkups.

25. Plaintiff also had hypertension and had to keep her blood pressure under control, not only due to the hypertension itself, but also because hypertension could contribute to her cancer coming back.

26. In or about December of 2015, Plaintiff had a cancer checkup scheduled and told Stewart that she would need to take off of work.

27. Stewart asked what it was about, and Plaintiff told him.

28. Stewart told the other employees in the store about Plaintiff's cancer, which was very embarrassing to her.

29. Plaintiff asked Stewart why he had done that, and he said he thought they needed to know in case Plaintiff got sick at work.

30. On or about April 9, 2016, Plaintiff's blood pressure became elevated while she was at work and she felt ill.

31. Plaintiff told the shift manager that she needed to leave to go to the doctor.

32. Plaintiff called Stewart and spoke to him.

33. Stewart was aware of Plaintiff's hypertension.

34. Plaintiff told Stewart that she needed to go to the doctor due to her blood pressure being elevated.

35. Stewart agreed for Plaintiff to go to the doctor.

36. On or about April 15, 2016, Stewart told Plaintiff that he wanted to talk to her about a customer of hers who had complained of slow service.

37. This had happened on or about April 7, 2016.

38. The restaurant was short-staffed in the kitchen at the time, which caused the delay.

39. Stewart had already discussed this incident with Plaintiff, at which time she told him about the kitchen being short-staffed.

40. Stewart falsely denied that they had discussed the incident and told Plaintiff to give him her apron.

41. Plaintiff asked Stewart if he were terminating her, and he said yes.

42. It was false and pretextual that Plaintiff had caused slow service to the customer.

**Retaliation**

43. Later on the day of Plaintiff's termination, Plaintiff sent Stewart a text message.

44. In it, Plaintiff said that Stewart had fired her because he thought she was a liability with her cancer.

45. Plaintiff further stated in the text message that she was taking it to her lawyer and that Stewart should get a lawyer.

46. On or about April 17, 2016, Plaintiff interviewed for a job at another IHOP in the Birmingham area owned by a different franchisee, KMG Enterprises.

47. In the interview, Plaintiff told the assistant store manager there that Stewart had fired her from the Crestwood IHOP and that she thought he had done so because of her cancer.

48. Plaintiff was hired with KMG Enterprises and started to work on or about April 20, 2016.

49. On or about April 24, 2016, the assistant store manager who had hired Plaintiff with KMG Enterprises told Plaintiff she had to let her go because her general manager told her that Plaintiff had a lawsuit against Defendant.

50. Plaintiff told the hiring manager that she had talked to a lawyer but had not filed anything.

51. The hiring manager said that it was out of her hands.

52. Plaintiff called the store general manager, Terry Davidson, and asked him what was going on.

53. Davidson said that Stewart had called him and told him that Plaintiff had a lawsuit against Defendant.

54. Davidson further said that his boss at KMG Enterprises wanted a "drama free" workplace and that they could not have Plaintiff working there.

55. Davidson said that Stewart had also said that Plaintiff was fired for selling drugs.

56. This was false and Plaintiff told Davidson so.

57. Davidson told Plaintiff that she should go to the EEOC and get it straightened out but that he would call Stewart and call Plaintiff back.

58. Davidson called Plaintiff back and said that Stewart had told him that Plaintiff had some open tickets, meaning customers left without paying, and that she was taking "medication on top of medication."

59. Plaintiff did not know anything about any open tickets and told Davidson this.

60. Plaintiff also told Davidson that the only medication she took was for her blood pressure and cancer.

61. Davidson said that there was nothing he could do.

## IV.  CAUSES OF ACTION

### COUNT I

### TITLE VII- SEXUAL HARASSMENT

62. Paragraphs 1-22 above are incorporated by reference.

63. Defendant violated Plaintiff's rights under Title VII by subjecting her to sexual harassment that constituted a hostile work environment.

64. As a result of the above described discriminatory acts, Plaintiff has been made to suffer emotional distress and mental anguish.

**WHEREFORE, these premises considered**, Plaintiff requests the following:

(i) That the Court issue an Order declaring that Defendant's acts as described herein violated Title VII;

(ii) That the Court enter an Order requiring Defendant to make Plaintiff whole by ordering Defendant to pay compensatory and punitive damages as a jury may assess;

(iii) That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with Defendant, from further violation of Plaintiff's rights under Title VII;

(iv) That the Court award Plaintiff prejudgment and post-judgment interest at the highest rates allowed by law and an amount to compensate her for any adverse tax consequences as a result of a judgment in her favor;

(v) That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, attorney's fees, expert witness fees, and expenses.

## COUNT II

## ADA- TERMINATION

65. Paragraphs 1-7 and 23-42 are incorporated herein.

66. Plaintiff's cancer constituted a physical impairment under the ADA.

67. Due to this impairment, Plaintiff was substantially limited with respect to the major life activity of the operation of her immune system.

68. At the time of the events of this case, Plaintiff was disabled under the ADA and/or had a history of a disability.

69. Plaintiff was and is a qualified individual able to perform the essential functions of her position.

70. Defendant violated Plaintiff's rights under the ADA by terminating her employment because or her disability and/or her history of a disability.

71. As a result of the above described discriminatory act, Plaintiff has been made to suffer lost wages and benefits, emotional distress, and mental anguish.

**WHEREFORE, these premises considered**, Plaintiff respectfully requests the following:

(i) That the Court issue an Order declaring that Defendant's actions described herein violated the ADA;

(ii) That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with Defendant, from continuing to violate the ADA;

(iii) That the Court enter an Order requiring Defendant to make Plaintiff whole by reinstating Plaintiff and placing her in the position she would have occupied in the

absence of discrimination (or front-pay), providing back-pay and lost benefits with interest, ordering Defendant to pay compensatory and punitive damages as a jury may assess, and awarding Plaintiff an amount to compensate her for any adverse tax consequences as a result of a judgment in her favor; and

(iv)   That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, expert witness fees, attorney's fees, and expenses.

## COUNT III

## ADA- RETALIATION

72. Paragraphs 1-7 and 23-61 are incorporated herein.

73. Plaintiff engaged in protected conduct under the ADA by expressing opposition to Defendant's having terminated her because of her cancer.

74. Defendant retaliated against Plaintiff for her having engaged in this protected conduct by interfering with her employment with KMG Enterprises and making false and defamatory statements about her.

75.   As a result of the above described discriminatory acts, Plaintiff has been made to suffer lost wages and benefits, emotional distress, and mental anguish.

**WHEREFORE, these premises considered**, Plaintiff respectfully requests the following:

(i)  That the Court issue an Order declaring that Defendant's actions described herein violated the ADA;

(ii)  That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with Defendant, from continuing to violate the ADA;

(iii)  That the Court enter an Order requiring Defendant to make Plaintiff whole by ordering Defendant to pay compensatory and punitive damages as a jury may assess, and awarding Plaintiff an amount to compensate her for any adverse tax consequences as a result of a judgment in her favor; and

(iv)   That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, expert witness fees, attorney's fees, and expenses.

                  Respectfully submitted,

                  s/ Adam M. Porter
                  Adam M. Porter
                  Attorney for Plaintiff
                  Adam M. Porter, LLC
                  Alabama Bar ID: ASB-2472-P75A
                  2301 Morris Avenue, Suite 102
                  Birmingham, Alabama 35203
                  Phone: (205) 322-8999
                  Facsimile: (205) 402-4619
                  Email: adamporter@earthlink.net

Plaintiff requests trial by struck jury.

s/ Adam M. Porter<br>
Attorney for Plaintiff

Defendant's Address:
Alliance Pancake Partners, LLC
c/o C T Corporation System
2 North Jackson St., Suite 605
Montgomery, AL 36104